DJF:JJB:cer

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDON DONGARRA,** | : | **No. 3:18-CV-1939** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Caputo, J.)** |
| | : | |
| **OFFICER D. SMITH, et al.,** | : | |
| **Defendants** | : | **(Electronically Filed)** |

## <u>BRIEF IN SUPPORT OF DEFENDANT'S</u>
## <u>MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT</u>

DAVID J. FREED
United States Attorney

<u>S / J. Justin Blewitt, Jr.</u>
J. JUSTIN BLEWITT, Jr.
Assistant U.S. Attorney
PA 01710
Cynthia E. Roman
Paralegal Specialist
240 West Third Street,
Suite 316
Williamsport, PA 17701
Phone: (717)221-4482
Facsimile: (717)221-2246
J.Justin.blewitt@usdoj.gov

Date:  June 13, 2019

# TABLE OF CONTENTS

I.    Procedural History ........................................................... 1

II.   Factual Background ........................................................ 3

    A.    Facts Regarding Exhaustion of Administrative Remedies .... 3

    B.    Facts Regarding Defendant Smith ........................................ 4

    C.    Facts Regarding Prison Clothing and Identification Cards... 4

III.  Questions Presented ...................................................... 6

IV.   Legal Standards ............................................................. 7

    A.    Dismissal- Fed. R. Civ. P. 12(b)(1) ..................................... 7

    B.    Dismissal – Fed. R. Civ. P. 12(b)(6) ................................. 9

    C.    Summary Judgement- Fed. R. Civ. P.  56 ........................... 10

V.    Argument.......................................................................... 8

    A.    Sovereign immunity bars Dongarra's claims against
Defendant Smith in his official capacity  ........................... 11

    B.    There is no <u>Bivens</u> Remedy here ......................................... 12

        1.    There Are Only Three Contexts Where A <u>Bivens</u>
Remedy Currently Exist ............................................. 12

        2.    Though "Disfavored," Courts Can Create New <u>Bivens</u>
Remedies .................................................................. 15

        3.    Dongarra's Claim Implicates New Constitutional
Contexts .................................................................... 16

i

4.     Alternative, Existing Processes Exist ......................... 22

5.     Other Special Factors Counsel Against Implying A <u>Bivens</u> Remedy ........................................................... 24

C.   Dongarra failed to exhaust administrative remedies ......... 27

D.   Defendant Smith lacks personal involvement in the alleged constitutional violation ......................................................... 34

E.   Defendant Smith is Entitled to Qualified Immunity ........... 36

VI.   Conclusion ........................................................................... 41

# TABLE OF AUTHORITIES

Federal Cases

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .................................................................. 10

Arizonans for Official English v. Arizona,
  520 U.S. 43 (1997) .................................................................... 8

Ashcroft v. al-Kidd
131 S. Ct. 2074 (2011) ................................................... 35, 36, 37

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .................................................................. 9

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) .................................................................. 9

Bistrian v. Levi,
  912 F.3d 79 (3d Cir. 2018) ............................................... 14, 20

Bivens v. Six Unknown Named Agents of Fed'l Bureau of Narcotics,
  403 U.S. 388 (1971) ......... 6, 12, 13, 14, 15, 16, 18, 19, 21, 22, 23, 24, 27

Blair v. Scott Specialty Gases,
  283 F.3d 595 (3d Cir. 2002) ............................................... 11

Booth v. Churner,
  532 U.S. 731 (2001) .................................................................. 33

Brown v. Grabowski,
  922 F.2d 1097 (3d Cir. 1990) ............................................... 35

Bush v. Lucas,
  462 U.S. 367 (1983) .................................................................. 12

Carlson v. Green,
  446 U.S. 14 (1980) ................................. 13, 14, 15, 16, 17, 18, 19, 24, 25

Chinchello v. Fenton,
  805 F.2d 126 (3d Cir. 1986) ........................................... 11, 12

Corr. Serv. Corp. v. Malekso,
  534 U.S. 61 (2001) ........................................... 12, 14, 15, 16, 18, 19, 23

Davis v. Passman,
  442 U.S. 228 (1979) .................................................................. 13

Del. Nation v. Pennsylvania,
  446 F.3d 410 (3d Cir. 2006) ............................................... 10

Emp'rs Ins. of Wausau v. Crown Cork & Seal Co.,
  905 F.2d 42 (3d Cir. 1990) ...................................................7
Farmer v. Brennan,
  511 U.S. 825 (1994) ............................................... 14, 20, 21
FDIC v. Meyer,
  510 U.S. 471 (1994) .........................................................11
Flannigan v. Shively,
  908 F.2d  (3d Cir. 1992) ..................................................35
Gould Elecs., Inc. v. United States,
  220 F.3d 169 (3d Cir. 2000) ..............................................7
In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997) ...........................................10
Inmates of Suffolk County Jail v. Rouse,
  129 F.3d 649 (1st Cir. 1997) ...........................................25
Jones v. United Parcel Serv.,
  214 F.3d 402 (3d Cir. 2000) ............................................11
Malley v. Briggs,
  475 U.S. 335 (1986) .........................................................37
Michtavi v. Scism,
  808 F.3d 203 (3d Cir. 2015) ........................................36, 37
Monell v. Dep't of Soc. Serv.,
  436 U.S. 658 (1978) .........................................................25
Mortensen v. First Fed. Sav. & Loan Ass'n,
  549 F.2d 884 (3d Cir. 1977) ............................................7, 8
Mullenix v. Luna,
  136 S. Ct. 305 (2015) .................................................36, 37
Nyhuis v. Reno,
  204 F.3d 65 (3d Cir. 2000) ..............................................28
Oriakhi v. United States,
  165 F. App'x 991 (3d Cir. 2006) .......................................27
Packard v. Provident Nat'l Bank,
  994 F.2d 1039 (3d Cir. 1993) .............................................8
Pearson v. Callahan,
  555 U.S. 223 (2009) .........................................................36
Perez-Barron v. United States,
  480 Fed. Appx. 688 (3d Cir. 2012) ...................................11
Porter v. Nussle,
  534 U.S. 516, 524 (2002) ..................................................25

iv

Rode v. Dellarciprete,
    845 F.2d 1195 (3d Cir. 1988) ............................................................ 35
Ross v. Blake,
    136 S. Ct. 1850 (2016) ............................................................... 32, 33
Skinner v. Switzer,
    562 U.S. 521 (2011) ......................................................................... 26,
Spruill v. Gillis,
    372 F.3d 218 (3d Cir. 2004) ............................................................ 28
Steel Co. v. Citizens for a Better Env't,
    523 U.S. 83 (1998) ............................................................................. 8
Sutton v. Rasheed,
    323 F.3d 236 (3d Cir. 2003) ............................................................ 35
Vanderklok v. United States,
    868 F.3d 189 (2017) .................................................. 14, 22, 23, 24
Wilkie v. Robbins,
    551 U.S. 537 (2007) ................................................. 15, 16, 21, 24
Willis v. UPMC Children's Hosp. of Pittsburgh,
    808 F.3d 638 (3d Cir. 2015) ........................................................... 10
Wood v. Moss,
    134 S. Ct. 2056 (2014) .................................................................... 13
Woodford v. Ngo,
    548 U.S. 81 (2006) ................................................................... 25, 28
Ziglar v. Abbasi,
    137 S. Ct. 1843 (2017)... 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 25, 26

Statutes

34 U.S.C. § 30301 ............................................................................. 25
42 U.S.C. § 1997e(a) ........................................................................ 27
42 U.S.C. §  1983 ............................................................................. 25
42 U.S.C. §  1997e ........................................................................... 25

Rules

Fed. R. Civ. P. 12(b)(1) ..................................................................... 7
Fed. R. Civ. P. 12(b)(6) ........................................................... 8, 9, 10
Fed. R. Civ. P. 56 ............................................................................. 10
Fed. R. Civ. P. 56(a) ........................................................................ 10

Regulations

28 C.F.R. § 542.13(a) ...........................................................27

28 C.F.R. §§ 542.15............................................................22

This brief is submitted is support of the Motion to Dismiss and/or for Summary Judgment filed on behalf of Defendant, D. Smith. The Court should dismiss the complaint and/or grant summary judgment to Defendant Smith because: (1) sovereign immunity bars Plaintiff's official capacity claims; (2) there is no <u>Bivens</u> remedy for Plaintiff's claims; (3) Plaintiff failed to exhaust administrative remedies; (4) Plaintiff cannot show that Defendant D. Smith had personal involvement in the alleged constitutional violation; and (5) Defendant Smith is entitled to qualified immunity.

## I.    Procedural History

Plaintiff, Jordon Dongarra, is an inmate confined at the United States Penitentiary Canaan (USP Canaan) in Waymart, Pennsylvania. (Doc. 1, Compl. at 2.) Dongarra initiated this lawsuit pursuant to <u>Bivens</u>[1] by filing a complaint on October 5, 2018 naming Officer D. Smith and two unnamed S.I.S. workers as defendants. (<u>Id.</u>)

Dongarra alleges Defendant D. Smith placed him at risk of harm by other inmates by labeling him as a sex offender when he arrived at

---

[1] <u>Bivens v. Six Unknown Named Agents of Fed'l Bureau of Narcotics</u>, 403 U.S. 388 (1971).

USP Canaan in the Receiving and Departure (R&D) on August 10, 2018. (Id. ¶ 14.) Dongarra states Defendant Smith gave him a T-shirt "which had Terrihut[2] on it" and gave him an identification card for a registered sex offender. (Id. at 14.) Dongarra claims "Terrihut" is a prison which houses inmates convicted for child molestations, rapes and sexual assaults. (Id.) Dongarra claims Officer Smith refused his request for a new T-shirt and identification card even after he explained that he would be at risk of harm by other inmates for being mistaken as a child molester. (Id. at 14-15.)

Dongarra states he decided to forego meals and recreation to avoid having contact with other inmates due to his fear of assault. (Id. at 15-17.) He claims Defendant Smith violated his Eighth Amendment rights and declaratory and injunctive relief as well and compensatory damages, punitive damages and costs of suit. (Id. at 17-18.)

Dongarra admits he did not complete the administrative remedy process, but asks the Court to excuse him from the exhaustion requirement because states his attempts to exhaust administrative

_____

[2] Defendant believes Dongarra is referring to either the Federal Correctional Institution or United States Penitentiary in Terre Haute, Indiana.

remedies failed because he received no responses, staff members read his mail and threw it away, and he feared staff retaliation. (Id. at 16.)

Attached to the complaint is a copy of the rejection notice for Administrative Remedy 954194-R1. (Id. at 23.) The notice indicates the administrative remedy was received by the Northeast Regional Office on September 17, 2018. (Id.) The notice, dated September 20, 2018, informed Dongarra that his administrative remedy was rejected because he "must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level." (Id.)

Dongarra states Defendant Smith was deliberately indifferent to his safety, in violation of the Eighth Amendment. (Id. at 3, 16-17.) He also asserts an unspecified due process violation. (Id. at 3.) Dongarra seeks declaratory and injunctive relief as well as compensatory damages, punitive damages and costs of suit. (Id. at 17-18.)

## II.    Factual Background

## A.    Facts Regarding Exhaustion of Administrative Remedies

The BOP's computerized record of Dangarra's administrative remedy submissions confirms that Administrative Remedy 954194-R1, filed at the BOP's Northeast Regional Office on September 17, 2018, is

the only administrative remedy Dangarra submitted concerning the issues alleged in the complaint.  (Statement of Material Facts (SMF) ¶¶ 1-18.)  As confirmed by the rejection notice attached to the complaint, the Regional Office received Administrative Remedy 954194-R1 on September 17, 2018, and rejected it on September 20, 2018, because Dangarra had not first submitted his grievance with a BP-9 form at the institution.  (Id. ¶¶ 14-16.)  Dangarra did not attempt to submit the administrative remedy at the institution.  (Id. ¶ 17.)

However, Dongarra filed three additional administrative remedies while at USP Canaan, submitting two remedies at the Regional Office to appeal a DHO decision and a third remedy at the institution to seek a one-year sentence reduction for his completion of RDAP.  (Id. ¶ 18.)

**B.    Facts Regarding Defendant Smith**

Correctional Officer David Smith was working as Compound #2 Officer on August 10, 2018.  (Id. ¶¶ 19-20.)  He had no contact with Dongarra and did not work in R&D on that date.  (Id. ¶¶ 21-22.)

**C.    Facts Regarding Prison Clothing and Identification Cards**

The operations of the Receiving and Discharge ("R&D") Department at any BOP facility is vital to the operation of a federal

correctional facility.  (Statement of Material Facts ("SMF") ¶ 23.)

Appropriate procedures in the R&D Department ensure for the

interdiction of contraband into the facility as well as significantly

assists in the safe and orderly operation of the institution by

maintaining accountability of an inmate's personal property following

their designation and admission into the facility.  (Id. ¶ 24.)

Presently, USP Terre Haute does not have a dedicated program

for the housing and treatment of sexual offenders.  (Id. ¶ 25.)  While

USP Terre Haute might house sexual offenders, these individuals are

not housed and/or provided any form of clothing or type of identification

which would indicate in any manner the basis of their underlying

criminal conviction.  (Id. ¶ 26.)  Moreover, on discharge from USP Terre

Haute all inmates receive the same items to wear at the time of their

transfer to another facility.  (Id. ¶ 27.)

Transferring inmates from USP Terre Haute receive a "bus roll"

which contains the clothing they will wear during their transfer to the

next facility – a white shirt and a pair of khaki pants.  (Id. ¶¶ 28-29.)

None of the clothing provided to inmates transferring from USP Terre

Haute have any identifying marks indicating the institution the inmate

came from, nor any markings signifying the nature of the inmates' underlying criminal conviction.  (<u>Id.</u> ¶ 29.)

All inmates arriving at USP Canaan receive the standard uniform, which contains no markings indicating what institution the inmate was last housed at and/or the specific criminal offense he committed.  (<u>Id.</u> ¶ 32.)  While inmates at USP Canaan do receive an identification card, there are no markings anywhere on this material indicating an inmate's underlying criminal offense or to signify that a specific inmate is a sex offender.  (<u>Id.</u> ¶ 30.)  The identification card contains all inmates' personal information in the exact same format.  (<u>Id.</u> ¶ 31.)

### III.   Questions Presented

A.   Whether the Court should dismiss the official-capacity claim because it is barred by sovereign immunity?

B.   Whether the Court should dismiss the complaint or grant summary judgment to Defendant Smith because no <u>Bivens</u> remedy extends to his claims?

C.   Whether the Court should dismiss the complaint or grant summary judgment to Defendant Smith because Dongarra failed to exhaust available administrative remedies?

D.   Whether the Court should grant summary judgment to Defendant Smith because he lacks personal involvement in the alleged constitutional violation?

E.  Whether the Court should grant summary judgment to Defendant Smith because he is entitled to qualified immunity?

## IV.  Legal Standards

## A.  Dismissal – Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the issue of whether the court has the power to hear the matter before it. Fed. R. Civ. P. 12(b)(1).  "It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto."  Emp'rs Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir. 1990).  The plaintiff has the burden of proving that subject-matter jurisdiction exists.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint when a court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When ruling on a Rule 12(b)(1) motion, a court may treat the motion as either a facial or factual challenge to the court's subject matter jurisdiction.  Gould Elecs., Inc. v.

United States, 220 F.3d 169, 178 (3d Cir. 2000). Similar to the standard applied to a Rule 12(b)(6) motion, a facial challenge requires that a court consider all allegations in a complaint as true. Mortensen, 549 F.2d at 891. A factual challenge does not require a court to accept the allegations of a complaint as true, but rather, the court may weigh any evidence to satisfy itself that it does or does not have subject matter jurisdiction. Id. at 891.

The court may weigh any evidence to satisfy itself that it does or does not have subject matter jurisdiction, but it cannot consider the merits of an action until it is satisfied that the dispute falls within the class of cases or controversies to which U.S. Const. art. III, § 2 has extended the judicial power of the United States. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). A plaintiff bears the burden of establishing that the district court has subject matter jurisdiction over the claims raised in the Complaint. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). A court that is without proper jurisdiction cannot proceed at all, and must dismiss the suit. Arizonans for Official English v. Arizona, 520 U.S. 43 (1997).

**B.      Dismissal – Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability."  Id. (quoting Twombly, 550 U.S. at 557).  To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In evaluating a complaint, although a court must accept factual allegations as true, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply "an unadorned, the defendant-unlawfully-harmed-me accusation."  Id. (quoting Twombly, 550 U.S. at 555, 557).  Additionally, a court may disregard a complaint's legal assertions—"[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).

In adjudicating a Rule 12(b)(6) motion, "[c]ourts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to [the] motion to dismiss." Del. Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006). A court is also free to consider documents that are "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted).

## C. Summary Judgment – Fed. R. Civ. P. 56

Summary judgment is appropriate when admissible record evidence, such as facts contained in declarations and other documents, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, a court should grant the motion if a reasonable jury could not return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In opposing summary judgment, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." Willis v. UPMC Children's Hosp. of Pittsburgh, 808

F.3d 638, 643 (3d Cir. 2015). "[A] plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). He cannot satisfy this burden with an affidavit or declaration that sets forth "opinions or conclusions" rather than "specific facts." Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) (internal quotation marks omitted).

## V. Argument

### A. Sovereign immunity bars Dongarra's claims against Defendant Smith in his official capacity.

Dongarra states in his Complaint that he is suing Defendant Smith in both his individual and official capacities. (Doc. 1 at 14.) However, his official-capacity claims are inarguably barred by the doctrine of sovereign immunity. See Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986) ("The district court properly ruled that sovereign immunity barred Chinchello's claim against Scott in his official capacity . . . ."); Perez-Barron v. United States, 480 Fed. Appx. 688, 691 (3d Cir. 2012) ("The United States, FBOP, and the individual FBOP employees in their official capacity, however, are barred from suit by the doctrine of sovereign immunity." (citing FDIC v. Meyer, 510

U.S. 471, 486 (1994); <u>Chinchello</u>, 805 F.2d at 130 n.4).  Therefore, the

Court should dismiss these claims for lack of jurisdiction.

**B.**    **There is no <u>Bivens</u> remedy here.**

**1.**    **There Are Only Three Contexts Where A <u>Bivens</u> Remedy Currently Exists**

The Supreme Court recently made fundamental changes to the

standards developed over decades by <u>Bivens</u> and its progeny.  It did so

by rejecting <u>Bivens</u>' underlying premise – that courts should take it

upon themselves to create causes of action to remedy the violation of a

constitutional right.  So unsound does the Supreme Court view the

continuing validity of that premise that it has recognized "the analysis

in the Court's three <u>Bivens</u> cases might have been different if they were

decided today."  <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1856 (2017).

<u>Abbasi</u>, however, is not the first time the Supreme Court

admonished courts against creating <u>Bivens</u> remedies in new contexts.

The Court had long ago began criticizing <u>Bivens</u> as an unacceptable

rebuke of "bedrock principles of separation of powers."  <u>See</u> <u>Corr. Serv.</u>

<u>Corp. v. Malesko</u>, 534 U.S. 61, 69 (2001); <u>see</u> <u>also</u> <u>Bush v. Lucas</u>, 462

U.S. 367, 390 (1983) ("we decline to create a new substantive legal

liability without legislative aid . . . because we are convinced that

Congress is in a better position to decide whether or not the public interest would be served by creating it").  But not until <u>Abbasi</u> had the Court aimed squarely at courts' continued reliance on cases following <u>Bivens</u> that had merely assumed but not actually decided that a <u>Bivens</u> remedy existed under a particular set of facts.[3]

Unequivocally reducing the significance of such case law, the Court ruled that that, going forward, <u>Bivens</u> actions exist only in those limited circumstances that do not meaningfully differ from those of the *only three cases* where the Court had affirmatively decided to create a <u>Bivens</u> remedy.  Those cases are <u>Bivens</u> (creating a remedy for a search and seizure violative of the Fourth Amendment); <u>Davis v. Passman</u>, 442 U.S. 228 (1979) (creating a <u>Bivens</u> action under the Due Process Clause for gender discrimination); and <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (creating a cause of action under the Eighth Amendment for denial of medical treatment to a prisoner).  If presented with a case that is

---

[3] Courts, including the Supreme Court, sometimes assumed without deciding that <u>Bivens</u> allowed for particular causes of action. <u>See</u>, <u>e.g.</u>, <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2067 (2014) ("[W]e have several times assumed without deciding that <u>Bivens</u> extends to First Amendment claims.  We do so again in this case.").

"meaningfully different" from all three, then a court must conclude that no Bivens remedy currently exists.  Abbasi, 137 S. Ct. at 1860.

The Third Circuit has had two occasions since Abbasi to grapple with whether a claim presents a "new" Bivens context.  First, in Vanderklok v. United States, 868 F.3d 189 (2017), the court held that a First Amendment retaliation claim was a "new" context.  868 F.3d at 199.  In doing so, the court acknowledged that Bivens, Davis, and Carlson are the *only* instances where the Supreme Court actually created a Bivens remedy.  Id. at 198.  More recently, in Bistrian v. Levi, 912 F.3d 79 (3d Cir. 2018), the Third Circuit, relying on Farmer v. Brennan, 511 U.S. 825 (1994) – and *not* on Bivens, Davis, or Carlson, ruled that a "new" Bivens context was not present where the BOP had recruited one inmate to participate in a surveillance scheme, but then failed to protect him from retribution from his fellow inmates.[4]

---

[4] Defendant acknowledges that Bistrian is binding authority. Nevertheless, Defendant believes that Bistrian's reliance on Farmer (and, to a lesser extent, the Third Circuit's own pre-Abbasi Eighth Amendment jurisprudence on Bivens claims) runs counter to the twin dictates of Abassi.  First, that a court may use only Supreme Court cases as a yardstick for determining whether a particular case raises a "new" context.  See 137 S.Ct. at 1859 ("If the case is different in a meaningful way from previous Bivens cases *decided by this Court*, then the context is new") (emphasis added).  Second, that Bivens, Davis, and

**2. Though "Disfavored," Courts Can Create New *Bivens* Remedies**

Abbasi does, however, provide a path for courts to create "new" Bivens remedies (*i.e.*, contexts meaningfully different from Bivens, Davis, or Carlson). Nevertheless, the Supreme Court discourages courts from doing so, calling it a "disfavored judicial activity." Abbasi, 137 S. Ct. at 1857. The two-part inquiry described in Wilkie v. Robbins, 551 U.S. 537, 550 (2007), guides whether circumstances warrant creation of a new remedy. Abbasi, 137 S. Ct. at 1857-59. First the court should "question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Wilkie, 551 U.S. at 550. "But even in the absence of an alternative" process, the court still must consider whether "any special

_____

Carlson are thus far the *only* circumstances where the Supreme Court explicitly stated rather than assumed that Bivens remedy existed under particular circumstances. Id. at 1855 ("These three cases – Bivens, Davis, and Carlson – represent the only instances in which the Court has approved an implied damages remedy under the constitution itself").

factors counsel[] hesitation before authorizing a new kind of federal litigation." Id.

Before reaching that two-part inquiry, however, this court first must conclude that Dongarra' claim presents meaningfully different contexts.

### 3. Dongarra's Claim Implicates New Constitutional Contexts

Abbasi held that if a case presents a context that is "different in a meaningful way from previous Bivens cases *decided by this Court*" (*i.e.*, Bivens, Davis, or Carlson), then the context is new. 137 S. Ct. at 1859 (emphasis added). The Court then provided a non-exhaustive list of potential "differences that are meaningful enough to make a given context a new one," id. at 1859-60, including things like the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; or the extent of the judicial guidance as to how an officer should respond to a relevant problem or emergency. Id. at 1860. Under these guiding principles, Dongarra's Eighth Amendment deliberate indifference claim presents a meaningfully different context that would require this Court to create "new" Bivens remedies that previously did not exist.

16

Of the trio of cases in which the Supreme Court previously extended a <u>Bivens</u> remedy, only <u>Carlson</u> addressed the Eighth Amendment. However, that is where the similarities between <u>Carlson</u> and Dongarra end.

Dongarra alleges the defendant placed him at risk of harm by providing him a shirt that contained markings from USP Terre Haute, which he believes is a sex offender prison. (Doc. 1, Compl. at 14.) He also states the defendant gave him a sex offender identification card. (<u>Id.</u>) Attached to the complaint is an administrative remedy document in which Dongarra explained that his temporary identification card contained a code "ROF," meaning "Registered Offender." (<u>Id.</u> at 20.) Dongarra does not allege he was physically harmed, only that he stayed away from other prisoners because he feared reprisals if inmates believed him to be a sex offender. (<u>Id.</u> at 16.) Dongarra states he received a new shirt and a new identification card weeks later. (<u>Id.</u> at 15.)

The injuries in <u>Carlson</u> stemmed from an alleged failure of BOP personnel to provide adequate medical care, whereas Dongarra only feared injury. Thus, Dongarra's claim does not involve the denial of

medical care and there is no "mechanism of injury." Abbasi, 137 S. Ct. at 1859. The plaintiff in Carlson also suffered from "serious," chronic asthma and alleged that the defendants knew that the facilities' medical equipment was "gross[ly] inadequate" but nevertheless kept him there against the advice of doctors. Carlson, 446 U.S. at 1490, n.1. When the plaintiff in Carlson suffered an asthma attack, defendants gave him contra-indicated drugs, delayed his transfer to an outside hospital, and "attempted to use a respirator known to be inoperative which further impeded his breathing." Id. These allegations bear little resemblance to Dongarra's that BOP officials knew or should have known a t-shirt from USP Terre Haute and a code on his identification card placed the inmate at risk of attack by unknown inmates by labelling Dongarra as a sex offender.

Two other contexts that the Supreme Court declared as meaningfully distinct from Carlson are instructive. First, the plaintiff in Malekso, 534 U.S. 61, sought Bivens liability for deprivation of medical accommodations while in federal custody, though at a private facility – circumstances that the Court described as "almost parallel" to Carlson. Abbasi, 137 S.Ct. at 1859. Also like Carlson, plaintiff in

<u>Malesko</u> sought liability under the Eighth Amendment. 534 U.S. at 72.

Despite those similarities, the Supreme Court concluded that <u>Malesko</u>

was sufficiently different from <u>Carlson</u> to deny a <u>Bivens</u> remedy.

Second, <u>Abbasi</u>'s allegations of harsh detention conditions –

including broken bones from alleged abuse by guards – also required

the Court to grapple with <u>Carlson</u>. Yet, even there the Court had little

trouble finding that <u>Abbasi</u> was a new context, explaining that though

"[t]he differences between this claim and the one in <u>Carlson</u> are perhaps

small, at least in practical terms, [g]iven this Court's expressed caution

about extending the <u>Bivens</u> remedy . . . the new-context inquiry is easily

satisfied." 137 S.Ct. at 1865. "[E]ven a modest extension is still an

extension." <u>Id.</u> at 1864.[5]

If <u>Malesko</u> and <u>Abbasi</u> were meaningfully distinct from <u>Carlson</u>,

then so must be this case. Dongarra's allegations are devoid of any

medical component. Dongarra complains he feared reprisal by the

general inmate population if inmates were to have believed he is a sex

---

[5] That is not to say that plaintiffs in <u>Malesko</u> and <u>Abbasi</u> did not plausibly allege a constitutional violation. The crux of <u>Abbasi</u> is that, even where a plaintiff has plausibly alleged a constitutional violation, it no longer follows that a <u>Bivens</u> remedy exists to address that potential wrong. 137 S.Ct. at 1864.

offender because the shirt provided to him when he entered USP Canaan had markings from USP Terre Haute and because his identification card contained what he claimed was an acronym for "Registered Offender." (Doc. 1, Compl.) However, Dongarra does not allege that any inmate ever confronted him about being a sex offender, threatened him harm, that BOP officials failed to protect him after receiving an actual threat, or that he was <u>actually</u> <u>harmed</u>. (<u>Id.</u>) And importantly, Dongarra states that the shirt and identification card that caused his concerns were replaced at a later date. (<u>Id.</u> at 15.) The difference between <u>Bistrian</u> where prison officials presumably had actual knowledge of a direct and articulable threat to the plaintiff's safety compared with the general allegation of the possibility that any unspecified inmate could have harmed Dongarra is a meaningful distinction between the contexts in the cases. <u>See</u> <u>Abassi</u>, 137 S. Ct. at 1859.

<u>Farmer</u>, too, is distinguishable. There a transsexual inmate sued BOP officials for deliberate indifference after another inmate beat and raped the plaintiff. <u>Id.</u> at 830. The plaintiff in <u>Farmer</u> "project[ed] feminine characteristics [that] would [make plaintiff] particularly

vulnerable to sexual attack by some USP-Terre Haute inmates." Id.
Here, Dongarra does not allege that he possessed or displayed any
outward, objectively vulnerable attributes that would place him in
heightened danger. More importantly, the Court in Farmer expressly
*assumed rather than decided* that a Bivens remedy existed, making it of
limited utility in light of the analysis prescribed by Abbasi. 511 U.S. at
833 ("*as we have assumed*, 'prison officials have a duty . . . to protect
prisoners from violence at the hands of other prisoners'") (emphasis
added).

Because Dongarra's Bivens claim arises in a new context, the
Court now must decide whether to create new Bivens remedies – a
"disfavored" outcome. Abbasi, 137 S. Ct. at 1857. To do that, the court
first should "question whether any alternative, existing process for
protecting the interest amounts to a convincing reason for the Judicial
Branch to refrain from providing a new and freestanding remedy in
damages." Wilke, 551 U.S. at 550. "But even in the absence of an
alternative" process, the court still must consider whether "any special
factors counsel[] hesitation before authorizing a new kind of federal
litigation." Id.

It is to those inquiries that the <u>Bivens</u> Defendant now turns.

4. **Alternative, Existing Processes Exist**

Alternative, existing processes exist which counsel against the Court creating <u>Bivens</u> remedies here. The FTCA can be an alternative process, <u>see</u> <u>Vanderklok</u>, 868 F.3d at 203-05. Although Dongarra does not assert a claim under the FTCA, he specifically states he is suing the defendants in both their individual and official capacities. (Doc. 2, Compl. at 14.)

Second, Dongarra could have brought state-law tort claims against any <u>Bivens</u> Defendant acting outside the scope of his employment (and thus the scope of the Westfall Act's protection). Though the plaintiff in <u>Vanderklok</u> never challenged at the district court level whether the defendant had acted within the scope of his employment, the Third Circuit nevertheless acknowledged that this is an existing, alternative process for <u>Abassi</u> purposes. 868 F.3d at 204.

Third, the BOP's Administrative Remedy Program offers three levels of administrative review, provides for emergency relief, requires written responses within specified timeframes, and allows the inmate to seek legal counsel. <u>See</u> 28 C.F.R. §§ 542.15, .16, .18. While the program

would not provide Dongarra with the monetary remedy he seeks here, the Supreme Court explains that "administrative review mechanisms" can provide "meaningful redress" – such as internal investigations and employee discipline – even if they do not "fully remedy the constitutional violation." <u>Malesko</u>, 534 U.S. at 520. The Third Circuit embraced that same idea in <u>Vanderklok</u>, when it recognized that non-judicial, "alternative administrative process" could provide adequate alternative process sufficient to forego creation of a new <u>Bivens</u> remedy. 868 F.3d at 206.

That Dongarra has at least one alternative process available to him, without more, is sufficient basis to not expand <u>Bivens</u> to this new context. <u>Abbasi</u>, 137 S. Ct. at 1863 ("when alternative methods of relief are available, a <u>Bivens</u> remedy usually is not"); <u>see</u> <u>also</u> <u>Malesko</u>, 534 U.S.at 70 (<u>Bivens</u> actions "provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct"). Because there is an alternative process available to Dongarra, this Court should not create a new <u>Bivens</u> remedy.

### 5. Other Special Factors Counsel Against Implying A Bivens Remedy

Even where alternative process does not exist – though it does here – still courts should refrain from implying a new Bivens remedy where other special factors counsel against such expansion. Vanderklok, 868 F.3d at 205 ("Although it is possible that no alternative remedy exists for Vanderklok, that does not conclude our analysis because, even in the absence of an alternative, a Bivens remedy is a subject of judgment") (internal quotations omitted) (quoting Wilkie, 551 U.S. at 550). True to this principle, the Third Circuit in Vanderklok refused to imply a Bivens First Amendment retaliation claim even though there was *no alternative process* available to the plaintiff. Vanderklok, 868 F.3d at 199. Special factors here similarly preclude expansion of Bivens to Dongarra's claim.

The prisoner litigation context is its own special factor, primarily because Congress has repeatedly declined opportunities to fashion causes of action against government officials for inmates alleging constitutional violations. Approximately fifteen years after the Supreme Court implied a Bivens remedy of inmates alleging deprivation of medical care in Carlson, Congress passed the Prison

Litigation Reform Act of 1995, <u>see</u> 42 U.S.C. § 1997e, to "reduce the quantity and improve the quality of prisoner suits." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). Congress designed the PLRA's provisions to "bring . . . under control" the "sharp rise in prisoner litigation in the federal courts," <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006), and to "oust the federal judiciary from day-to-day prison management," <u>Inmates of Suffolk County Jail v. Rouse</u>, 129 F.3d 649, 655 (1st Cir. 1997).

What the PLRA notably does *not* "provide [is] a standalone damages remedy against federal jailers." <u>Abbasi</u>, 137 S. Ct. at 1865. And it is not as though the PLRA was Congress' only occasion to do so. Congress had yet another post-<u>Carlson</u> opportunity to create a cause of action for inmates when it passed the Prison Rape Elimination Act of 2003, <u>34 U.S.C. § 30301</u>, *et seq.* It declined to do so. In fact, as far back as the Civil Rights Act of 1871 – when Congress first created a federal remedy against *state* actors who violate constitutional rights (later codified at <u>42 U.S.C. § 1983</u>) – Congress had the opportunity but declined to create a right against *federal* actors. See <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658 (1978).

Congress' silence must control. "When a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis." Abbasi, 137 S.Ct. at 1857. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." Id. "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." Id. (internal quotations removed). "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . ., the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature of federal-court jurisdiction under Article III." Id. at 1858.

Here, this Court must reconcile its resolution of this case with Congress' myriad opportunities to create such a right of action, including the PLRA which Congress passed for the express purpose of *reducing* inmate litigation. See, e.g., Skinner v. Switzer, 562 U.S. 521, 534 (2011) (In passing PLRA, "Congress has placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in

federal court."). Creation of a new <u>Bivens</u> remedy here would be incongruous with that unequivocal legislative goal. This Court, therefore, should refrain from expansion of <u>Bivens</u> in these new contexts.

## C. Dongarra failed to exhaust administrative remedies.

Under the Prison Litigation Reform Act (PLRA), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies[6] as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires an inmate to exhaust administrative remedies <u>prior</u> to filing suit. <u>See</u> <u>Oriakhi v. United States</u>, 165 F. App'x 991, 993 (3d Cir. 2006). A court

---

[6] The BOP has established an administrative remedy procedure through which an inmate may submit complaints relating to any aspect of his confinement. Inmates must first present their complaints to staff in an attempt to informally resolve the matter. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then present the issue to the warden within twenty calendar days of the events giving rise to the complaint. <u>Id.</u> § 542.14. If an inmate is dissatisfied with the warden's response, he may then appeal to the BOP Regional Director within 20 calendar days. <u>Id.</u> § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days. <u>Id.</u> This constitutes the final level of administrative review. <u>Id.</u>

is not permitted to "excuse compliance" with the exhaustion requirement, "whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (internal quotation marks omitted).

The PLRA also demands "proper exhaustion"—that is, "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91, 93 (2006). An inmate's failure to properly exhaust results in the procedural default of the claim. See Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004).

Dongarra filed his complaint less than two months after the incident giving rise to his lawsuit and admits he did not complete the BOP's administrative remedy process before filing his lawsuit in federal court. (Doc. 1 at 6, 16, 19-23.) The Court should reject Dongarra's request to be excused from the PLRA exhaustion requirement because as discussed below, his excuses are vague, lack evidentiary support, are contradicted by his subsequent submission of administrative remedies and evidence shows Dongarra failed to follow the BOP's procedures for proper submission of administrative remedies.

First, inmates are required to submit an informal resolution

attempt with staff, and if the matter cannot be informally resolved, the inmate must submit a formal administrative remedy request to the warden where he is confined using the BP-9 form within twenty days following the date on which the basis for the request occurred. (SMF ¶¶ 1-3.) Dongarra avers he submitted a BP-9 form at the institution on the same date as the incident occurred, but never received a response. (Doc. 1 at 6-7, 16-17.)

The BOP's computerized record of Dongarra's administrative remedy submissions reflects he submitted only one administrative remedy concerning the subject of his complaint – Administrative Remedy 954194-R1 was submitted at the Northeast Regional Office on September 17, 2018. (SMF ¶¶ 14-16.) Contrary to the averments in the complaint, there is no BOP record that corresponds Dongarra's

averments concerning his submission of an administrative remedy request at the institution. (Id.)

Second, Dongarra states that since he did not receive a response to the administrative remedy which he submitted at the institution on August 10, 2018, he mailed a BP-10 administrative remedy appeal to Grand Praire, Texas fourteen days later. (Doc. 1 at 6-7, 16-17. 19-23.) Attached to the complaint is a copy of Administrative Remedy 954194-R1, which is dated August 24, 2018, and a rejection notice from the BOP's Northeast Regional Office. (Doc. 1 at 20-23.) The rejection notice corresponds to the data in the BOP's computerized record of Dongarra's administrative remedy submissions which indicates that Administrative Remedy 954194-R1 is the only administrative remedy Dongarra submitted concerning the allegations in the complaint.[7] (SMF ¶¶ 14-18.)

BOP regulations provide that a warden must respond to an administrative remedy within 20 days of its acceptance, and may

---

[7] Dongarra also states he tried to exhaust administrative remedies and used available grievance procedures on September 4, 2018, but received no response. (Doc. 1 at 15-16.) It is unclear, from those vague statements, what action he claims he took on September 4, 2018.

inform the inmate of a 20-day extension if additional time is required to respond to the request.  (SMF ¶¶ 11-12.)  If no response is received at the end of 20 days, or 40 days if an extension is required, the inmate may deem the administrative remedy to be denied and submit an appeal to the next level.  (Id. ¶ 13.)  Thus, if Dongarra's averment concerning his alleged submission of an administrative remedy (BP-9) at the institution on August 10, 2018 were true, his attempt to appeal that administrative remedy based on the lack of a response was premature, and still within the twenty days he had to submit an administrative remedy at the institution.  (SMF ¶¶ 1-13.)

Third, the rejection notice for administrative remedy 954194-R1 is dated September 20, 2018.  (Doc. 1 at 23.)  Dongarra signed his complaint on September 29, 2018, (Id. at 11, 18), and filed it on October 5, 2018, less than two months after the alleged incidents of August 10, 2018.  (Id.)  Dongarra's rush to file suit without completing the administrative remedy process demonstrates an unwillingness to complete the administrative remedy process or an attempted end-run around the exhaustion requirement.

Fourth, Dongarra asks the Court to excuse his failure to exhaust administrative remedies, claiming that in accordance with <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016),[8] administrative remedies were unavailable to him. (<u>Id.</u> at 16.) Dongarra asserts staff members at USP Canaan deterred from submitting administrative remedies because they were rude, gave him bad looks, talked about him, laughed at him and he feared retaliation. (<u>Id.</u> at 6-7, 15-16, 20, 23.) Dongarra also states that staff members interfered with his administrative remedy submissions by reading his legal mail and throwing mail away. (<u>Id.</u>)

The Supreme Court made clear in <u>Ross</u> that the PLRA unambiguously mandates exhaution of administrative remedies before an inmate brings suit to challenge prison conditions, absent "one

---

[8] In <u>Ross</u>, an inmate claimed two guards assaulted him while moving him to the segregation unit. <u>Id.</u> at 1855-56. Ross reported the incident to a correctional officer who referred the incident to the Internal Investigative Unit (IIU). <u>Id.</u> The IIU issued a report condemning the guard's actions and the inmate subsequently sued for, among other things, excessive use of force. <u>Id.</u> Although a jury found the guard liable, the Supreme Court determined that the inmate had not exhausted administrative remedies even though he mistakenly believed he had sufficiently exhausted through the IIU investigation. <u>Id.</u> Dongarra's averments concerning his reported complaints to Special Investigative Services (SIS) is not an alternative to the administrative remedy program. (Doc. 1 at 8.)

significant qualifier:  the remedies must indeed be 'available' to the prisoner."  136 S.Ct. at 1856.  The Court explained that inmates are required to exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Ross, 136 S. Ct. at 1959 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

The basis for Dongarra's request to be excused from the exhaustion requirement lacks legitimacy because his averments are vague and based on his purported claim of suspicion or fear, rather than fact.  (Doc. 1 at 6-7, 16-17.)  Dongarra merely states that unnamed staff members were interfering with his attempts to submit administrative remedies by throwing away his mail and that he feared retaliation. (Id.)  However, the BOP's computerized administrative remedy record reflects that he successfully mailed three administrative remedies to the BOP's Northeast Regional Office and submitted one administrative remedy at the institution since he arrived at USP Canaan.  (SMF ¶¶ 14-18.)

Therefore, the Court should dismiss the complaint based on Dongarra's admitted failure to exhaust administrative remedies or grant summary judgment to Defendant Smith because the record

confirms Dongarra's failure to exhaust available administrative remedies.

## D. Defendant Smith lacks personal involvement in the alleged constitutional violation.

Dongarra identifies Officer D. Smith as the only named defendant in his lawsuit, stating he "held the rank of R in D, and was assigned to Canaan Penitentiary." (Doc. 1 at 2, 13.) Dongarra avers that while he was in R&D for processing upon his arrival at USP Canaan on August 10, 2018, between 12:10 p.m. and 1:00 p.m., Officer D. Smith gave him a t-shirt that was different from those provided to the other inmates who arrived at the institution at the same time. (Id. at 14.) Officer Smith also gave him an identification card with a code on it that he believes identifies him as a registered sex offender. (Id. at 14.)

However, the Daily Assignment Roster for USP Lewisburg on August 10, 2018 indicates that Correctional Officer David Smith was assigned as the Compound #2 officer at USP Canaan between the hours of 2:00 p.m. and 10:00 p.m. (military hours 14:00 to 22:00). (Statement of Material Facts (SMF) ¶¶ 16-17.) Therefore, Correctional Officer David Smith was not scheduled to work at the time of the incident alleged in the complaint. (Id.) Additionally Correctional Officer David

Smith declares that he had no contact with Dongarra on August 10, 2018 and did not work in the R&D department.  (Id. ¶¶ 17-18.)

Before a court finds a defendant liable for a civil rights violation, a plaintiff must show that the defendant had some personal involvement or took some affirmative action in regards to the violation.  See Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (a 42 U.S.C. § 1983 case); Flannigan v. Shively, 908 F.2d 722 (3d Cir. 1992); Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that allegations of personal involvement must be made with particularity).

Defendant D. Smith is entitled to qualified immunity because due to his lack of personal involvement in the claims alleged in the complaint, Dongarra cannot establish that he violated a statutory or constitutional right.  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (Qualified immunity shields federal officials from liability for money damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.")

**E.    Defendant Smith is Entitled to Qualified Immunity.**

Qualified immunity shields federal officials from liability for money damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011).  This exacting standard is meant to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." <u>Id.</u> at 2085.  The Court has discretion to decide which prong of the qualified immunity analysis to address first.  <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

With respect to the "clearly established" prong, "the court must define the right allegedly violated at the appropriate level of specificity." <u>Michtavi v. Scism</u>, 808 F.3d 203, 206 (3d Cir. 2015) (internal quotation marks omitted).  "The dispositive question," the Supreme Court has explained, "is whether the violative nature of <u>particular</u> conduct is clearly established." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis in original) (internal quotation marks omitted). "This inquiry must be undertaken in light of the specific context of the

case, not as a broad general proposition." Id. (internal quotation marks omitted).

After determining the properly tailored definition of the right, the Court must examine whether there is "precedent indicating that the right at issue is clearly established." Michtavi, 808 F.3d at 207. An official is shielded from liability unless "existing precedent . . . [has] placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. 2083. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 2085 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The summary judgment record shows that Defendant Smith was working as Compound #2 Officer on August 10, 2018. (SMF ¶¶ 19-20.) He had no contact with Dongarra and did not work in R&D on that date. (Id. ¶¶ 21-22.)

Notwithstanding Defendant Smith's lack of personal involvement with respect to Dongarra's claims, record evidence shows that presently, USP Terre Haute does not have a dedicated program for the housing and treatment of sexual offenders. (Id. ¶ 25.) While USP Terre Haute might house sexual offenders, these individuals are not housed and/or

provided any form of clothing or type of identification which would indicate in any manner the basis of their underlying criminal conviction. (Id. ¶ 26.) Moreover, on discharge from USP Terre Haute all inmates transferring out of USP Terre Haute receive a white shirt and a pair of khaki pants. (Id. ¶¶ 27-29.) None of the clothing provided to inmates transferring from USP Terre Haute have any identifying marks indicating the institution the inmate came from, nor any markings signifying the nature of the inmates' underlying criminal conviction. (Id. ¶ 29.)

All inmates arriving at USP Canaan receive the same standard uniform, which contains no markings identifying the last institution where the inmate was housed and/or the specific criminal offense he committed. (Id. ¶ 32.) While inmates at USP Canaan do receive an identification card, there are no markings anywhere on this material indicating an inmate's underlying criminal offense or to signify that a specific inmate is a sex offender. (Id. ¶ 30.) The identification card contains all inmates' personal information in the exact same format. (Id. ¶ 31.)

Therefore, the Court should enter judgment in Defendant Smith's favor because there is no reason to conclude that he (or any BOP official working in R&D) had the capacity unlawfully place Dongarra at risk of harm by using prison clothing and his identification card to label him as a sex offender.

## VI. Conclusion

In light of the aforementioned, the Court should dismiss the complaint and/or grant summary judgment to Defendant Smith with a certification that any appeal shall be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

DAVID J. FREED
United States Attorney

<u>S / J. Justin Blewitt, Jr.</u>
J. JUSTIN BLEWITT, Jr.
Assistant U.S. Attorney
PA 01710
Cynthia E. Roman
Paralegal Specialist
240 West Third Street,
Suite 316
Williamsport, PA 17701
Phone: (717)221-4482
Facsimile: (717)221-2246
Date: June 13, 2019          J.Justin.blewitt@usdoj.gov

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDON DONGARRA,** | : | No. 3:18-CV-1939 |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Caputo, J.)** |
| | : | |
| **OFFICER D. SMITH, et al.,** | : | |
| **Defendants** | : | **(Electronically Filed)** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on June 13, 2019, she served a copy of the attached

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:
Jordon Dongarra
Reg. No. 60707-060
USP Canaan
P.O. Box 300
Waymart, PA 18472

s/ Tammy S. Folmar
TAMMY S. FOLMAR,Contractor
Data Analyst/Legal Assistant