# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORDON DONGARRA, | : | Civil No. 3:18-CV-01939 |
| Plaintiff, | : | |
| v. | : | |
| OFFICER D. SMITH, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is a *Bivens* action brought by an inmate in a federal prison. Plaintiff Jordon Dongarra ("Dongarra") alleges that Defendants, three officers of the Federal Bureau of Prisons ("BOP"), violated his civil rights by taking actions that led other inmates to believe that he was a sex offender, which allegedly put him in danger of physical harm. The case is presently before the court on Defendants' motion to dismiss and/or for summary judgment and Dongarra's "motion for judgment," which the court construes as a motion for summary judgment. For the reasons that follow, Defendants' motion is granted, Dongarra's motion is denied as moot, and this case is dismissed with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

Dongarra initiated this case by filing a complaint on October 5, 2018. (Doc. 1.) According to the allegations in the complaint, Dongarra was transferred to the United States Penitentiary, Canaan ("USP Canaan" or "the prison") in Wayne County, Pennsylvania on August 10, 2018. (Doc. 1 at 14.) When Dongarra

1

arrived at the prison, Defendant D. Smith ("Smith") gave Dongarra a t-shirt that was different from the t-shirts given to the other arriving prisoners. (*Id.*) Dongarra's t-shirt contained a reference to the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute").[1] (*Id.*) The complaint alleges that FCI Terre Haute is "a prison for child molesters, rapist[s]," and other sex offenders. (*Id.*) In addition to the t-shirt, Dongarra was also given an "I.D. card register offender [sic] so all the inmates would think [he was] a sex offender." (*Id.*) Dongarra immediately asked Smith for a different t-shirt and different ID card, explaining that he feared he would be in danger if he was not given those items because the t-shirt and ID card that he had been given would give other inmates the impression that he was a sex offender. (*Id.*) Smith allegedly disregarded Dongarra's concerns, telling Dongarra that he "[didn't] give a shit" and that he hoped Dongarra knew "how to fight or make, and use a knife." (*Id.* at 14–15.) Dongarra then asked other staff members to intervene on his behalf. (*Id.* at 15.) The other staff members asked Smith to give Dongarra a new t-shirt, but Smith again refused to do so. (*Id.*)

After his initial experience with Smith, Dongarra entered the prison's general population "with some explaining to do to other inmates" who may have

---

[1] The complaint alleges that the t-shirt had "terrihut" on it, which the court liberally construes as a reference to "Terre Haute."

2

had the misapprehension that Dongarra was a sex offender. (*Id.*) Because Dongarra feared that other inmates had such a misapprehension, he avoided going to meals and avoided recreation time so as to prevent encounters with other inmates. (*Id.*) After several weeks in the prison, Dongarra was given a new t-shirt and a new ID card. (*Id.*)

Dongarra alleges that he attempted to exhaust his administrative remedies with respect to the incident involving Smith on September 4, 2018, but that staff members from the prison threw his mail away. (*Id.*) Dongarra alleges that the incident involving Smith was captured on prison surveillance cameras. (*Id.*) The complaint names as defendants Smith and two John Doe officers who were allegedly on camera with Dongarra and Smith during the incident. (*Id.* at 2–3.) As remedies for the alleged violation of his constitutional rights, Dongarra seeks a declaration that Defendants violated his rights, injunctive relief requiring the prison to terminate Smith from his job, $150,000 in compensatory damages, and $250,000 in punitive damages. (*Id.* at 17–18.)

On April 22, 2019, Smith filed a motion to dismiss and/or a motion for summary judgment. (Doc. 21.) Briefing on that motion has concluded. (*See* Docs. 31, 33, 37, 38, 41.)[2] Dongarra has also filed a "motion for judgment," which

---

[2] Briefing on Defendants' motion includes two sur replies filed by Dongarra. (*See* Docs. 38, 41.) Dongarra did not obtain leave of the court to file those sur replies as required by Local Rule 7.7.

the court construes as a motion for summary judgment. (Doc. 39.) Dongarra has not filed a brief in support of his motion, and the time for doing so has expired under Local Rule 7.5. Accordingly, since briefing on both motions has concluded, the motions are ripe for the court's resolution.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## MOTION TO DISMISS STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

---

Nevertheless, in order to give Dongarra's filings a liberal construction, the court has considered the sur replies in its review of Defendants' motion. *See, e.g.*, *Sause v. Bauer*, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018) (noting that district courts must liberally construe filings from unrepresented litigants).

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (*Bistrian I*).

In determining whether to dismiss a complaint brought by an unrepresented litigant, a court must construe the complaint liberally.  *Sause*, 138 S. Ct. at 2563.  Nevertheless, unrepresented litigants "still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### SUMMARY JUDGMENT STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'"  *Thomas v.*

*Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or

suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

In his motion, Smith argues that he should be granted dismissal or summary judgment because (1) he is entitled to sovereign immunity as to Dongarra's official-capacity claims, (2) *Bivens* should not be extended to the facts of this case, (3) Dongarra failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), (4) Smith was not personally involved in the alleged violation of Dongarra's rights, and (5) Smith is entitled to qualified immunity. (*See* Doc. 31 at 8.) Having reviewed Smith's motion, the court concludes that Smith is entitled to sovereign immunity, that *Bivens* should not be

7

extended to the facts of this case, and that Dongarra is not entitled to injunctive relief. The court accordingly dismisses Dongarra's complaint without addressing Smith's remaining arguments. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (noting that a district court has the discretion to address the merits of a complaint before addressing the issue of administrative exhaustion under the PLRA). Furthermore, because the John Doe Defendants are entitled to the same relief as Smith, the court will dismiss the action as to all Defendants.

### A. Defendants Are Entitled to Sovereign Immunity

The doctrine of sovereign immunity bars suits against the United States or its agencies unless the government has waived that immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). Sovereign immunity extends to individual officers acting in their official capacities. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980))). Accordingly, Dongarra's claims in this case are barred by the doctrine of sovereign immunity to the extent that they are brought against the Defendants in their official capacities. *Perez-Barron v. United States*, 480 F. App'x 688, 691 (3d Cir. 2012) (granting sovereign immunity to BOP officers acting in their official capacities).

### B. The Court Will Not Extend *Bivens* to the Facts of This Case

The court will next address Smith's argument that the implied damages remedy under *Bivens* does not apply to the facts of this case and that the court should not extend it to this situation. (Doc. 31 at 19–34.) In *Bivens*, the Supreme Court recognized that a plaintiff may bring an implied damages remedy against a federal official for violation of the plaintiff's Fourth Amendment right to be free from unreasonable searches, despite the fact that no federal statute or constitutional provision allowed such a cause of action. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *see also Mack v. Yost*, __ F.3d __, No. 18-3504, 2020 WL 4459994, at *1 (3d Cir. Aug. 4, 2020). Since that decision, the Supreme Court has only recognized an implied damages remedy against a federal official in two other cases: *Davis v. Passman*, 442 U.S. 228, 245 (1979) (recognizing an implied cause of action for sex discrimination under the Fifth Amendment), and *Carlson v. Green*, 446 U.S. 14, 18–23 (1980) (recognizing an implied cause of action for inadequate medical care under the Eighth Amendment). *See Mack*, 2020 WL 4459994, at *1 n.1.

In the absence of Supreme Court extensions of the implied damages remedy under *Bivens*, lower federal courts recognized that they had the power to extend *Bivens* to new fact situations in appropriate circumstances. *See id.* at *5. That

9

changed with the Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. \_\_, 137 S. Ct. 1843 (2017).

In *Abbasi*, the Supreme Court considered several *Bivens* claims brought to enforce the plaintiff's rights under the Fourth and Fifth Amendment, all of which were factually distinct from the claims in *Bivens*, *Davis*, and *Carlson*. *Id.* at 1853–54. In analyzing the claims, the Court noted that it had taken a much more cautious approach to implying causes of action in the years since *Bivens* had been decided. *Id.* at 1855–56. Given that more cautious approach, the Court acknowledged that the decision in *Bivens*, *Davis*, and *Carlson* "might have been different if they were decided today." *Id.* at 1856. The Court instructed lower courts to be cautious in extending *Bivens* remedies to new contexts, noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and that decisions of whether to recognize new causes of action should generally be left to Congress. *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Under *Abbasi*, a court presented with a *Bivens* claim must conduct a two-part analysis. *Mack*, 2020 WL 4459994, at *3. First, the court "must determine whether the *Bivens* claim presents a 'new context.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). A case presents a new context if "is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Id.* (internal alterations omitted) (quoting *Abbasi*, 137 S. Ct. at 1859). The difference between

the two cases does not need to be stark, because "a modest extension is still an extension." *Id.* (quoting *Abbasi*, 137 S. Ct. at 164).  Second, if the case presents a new context, the court "must then determine if there are 'special factors counselling hesitation' in expanding *Bivens*." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857).  This determination "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857–58.)  "If 'there are any special factors that counsel hesitation,' courts must 'reject the request' to expand *Bivens*." *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. __, 140 S. Ct. 735, 743 (2020)).

Turning to the facts of this case, it is clear that Dongarra's *Bivens* claim presents a new context to which *Bivens* has never been extended.  Dongarra's claim is grounded in the Eighth Amendment, and, liberally construed, is based on both a conditions of confinement theory and a cruel and unusual punishment theory.  (*See* Doc. 1 at 17.)  The Supreme Court has never recognized a *Bivens* cause of action under either theory.  Although *Carlson* recognized that a *Bivens* claim could be brought for violation of a plaintiff's Eighth Amendment rights, the claim in that case was based exclusively on a theory of deliberate indifference to a serious medical need under *Estelle v. Gamble*, 429 U.S. 97 (1976).  *See Carlson*, 446 U.S. at 1471.  Dongarra's claim—that Smith and the other Defendants violated

11

his rights under the Eighth Amendment by giving him a t-shirt and ID card that were different from the ones given to other arriving inmates—is notably different from that claim and is not based on deliberate indifference to a serious medical need.

Thus, because Dongarra's claim presents a new context, the court must determine whether there are any special factors that counsel hesitation in extending *Bivens*. *Mack*, 2020 WL 4459994, at *3. The court finds that there are.

A special factors analysis depends on the context of an individual case. *Id.* at *5. Nevertheless, two special factors are, if present, "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns." *Id.* at *6 (quoting *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (*Bistrian II*)).

Here, Dongarra had access to an alternative remedial structure through the use of the BOP's grievance process. *See id.* (finding that BOP's grievance process provided alternative remedial structure). "Although the alternative remedy would not provide [Dongarra] with money damages for the constitutional violation incurred," it could still provide some of the redress that Dongarra seeks, including his request for injunctive relief. *Id.* Like *Mack*, "this was not a case of 'damages or nothing,'" and, like the plaintiff in that case, Dongarra "did not sustain any physical injuries with resulting monetary loss, which may have otherwise caused

12

[the court] to create a damages remedy despite the availability of the BOP's administrative remedy." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1862).

Separation of powers concerns similarly caution against expanding *Bivens* to this case. Because Dongarra's complaint alleges that Defendants took improper actions when admitting him into the prison, resolution of his claim would necessarily involve judicial determinations as to the proper procedures for admitting inmates into a prison, and Congress has delegated such determinations to the BOP. *See id.* at *7 (noting that courts should proceed with caution before extending *Bivens* to decisions that have been delegated to the BOP).

Accordingly, because Dongarra's complaint presents a new context to which *Bivens* has not previously been extended and because special factors counsel against extending *Bivens* to that new context, the court declines to extend *Bivens* to the facts of this case.

**C. Dongarra's Claim for Injunctive Relief Is Dismissed**

In his complaint, Dongarra seeks "[a] preliminary and permanent injunction ordering defendant D. Smith to be fired from [his] job." (Doc. 1 at 17.) Dongarra's request for injunctive relief is dismissed because Dongarra has not named any defendant who has the power to terminate Smith from his job. *See Abu-Jamal v. Kerestes*, No. 3:15-CV-00967, 2016 WL 4574646, at *12 (M.D. Pa. Aug. 31, 2016) (finding that injunctive relief against defendant prison officials

13

would not be proper where none of the named defendants had the authority to implement the requested relief).

### D. The Court Will Deny Dongarra Leave to Amend

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, because the court declines to extend *Bivens* to the facts of this case and because Defendants are entitled to sovereign immunity, the court finds that amendment of Dongarra's complaint would be futile. The court will accordingly deny leave to amend.

### CONCLUSION

For the foregoing reasons, Smith's motion to dismiss is granted and Dongarra's motion for summary judgment is denied as moot.[3] An appropriate order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Court Judge  
Middle District of Pennsylvania

Dated: August 24, 2020

---

[3] Having concluded that dismissal is warranted for other reasons, the court does not address Defendants' qualified immunity, administrative exhaustion, or personal involvement arguments.